U.S. District Court
District Of Delaware

Thomas Gordon,
                    Plaintiff,

            V.                    C.A. No. 11-1029-LPS

Sgt. Gill, C/o. Deppe,
                    Defendants,

Plaintiff's Reply
Brief In Opposition To
Defendants' Summary Judgment
Motion

Dated: 9-14-15

Thomas Gordon
SBI# 455684
1181 Paddock Road
Smyrna, De 19977

FILED
SEP 18 2015
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

# Table of Contents

Table of Citations — — — — — — — — —   Page PP

Counter-Statement of Facts — — — — — —   1

Argument 1 — — — — — — — — — — —   2

I. Defendants Are Not Entitled To Judgment As A Matter Of Law On Plaintiff's Excessive Force Claim As The Use of Capstun Was Excessive Under The Conditions. — — — — — — — — **a**

Argument 2 — — — — — — — — — — 11

II. Defendant Deppe Is Not Entitled To Summary Judgment On Plaintiff's Failure To Intervene or Failure To Protect Claim And Plaintiff Can Assert Claim Alleging Failure To File An Accurate Report. — — — — 11

Argument 3 — — — — — — — — — — 13

III. Defendants Claim Of Qualified Immunity Is MOOT. — — — — — — — — — 13

Conclusion — — — — — — — — — 15

Exhibits — — — — — — — — — 16



# Table Of Citations

Giles v. Kearney, 516 F.Supp. 2d 362, 365
(D.Del.2007) _____ pg. 6

Laury v. Greenfield, 87 F.Supp. 2d 1210,
1217 (D.Kan.2000) _____ pg. 6-7

Campbell v. Grammer, 889 F.2d 797, 802
(8th Cir. 1989) _____ pg. 7-8

Romaine v. Rawson, 140 F.Supp. 2d 204, 211-
12 (N.D.N.Y. 2001) _____ pg. 7

Felix v. McCarthy, 939 F.2d 699, 702 (9th
Cir. 1991) _____ pg. 7

Gray v. Spillman, 925 F.2d 90, 93 (4th Cir.
1991) _____ pg. 7

Johnson v. Doherty, 713 F.Supp. 69,
71 (S.D.N.Y. 1989) _____ pg. 7

Bowman v. Casler, 622 F.Supp. 836,
838 (N.D.N.Y. 1985) _____ pg. 7

Valencia v. Wiggins, 981 F.2d 1440,
1443, 1447 (5th Cir. 1993) _____ pg. 8

Smallwood v. Renfro, 708 F.Supp. 182, 188
(N.D. Ill. 1989) _____ pg. 8

Jones v. Shields, 207 F.3d 491, 495 (8th
Cir. 2000) _____ pg. 9

Lawrence v. Bowersox, 297 F.3d
727, 731-32 (8th Cir. 2002) _____ pg. 9-10

Treats v. Morgan, 308 F.3d 868,
872-73 (8th Cir. 2002) _____ pg. 9-11

pp.

) Headwaters Forest Defense v. Cant Of Humboldt, 240 F.3d 1185, 1199–1200 (9th Cir. 2000), judgment vacated on other grounds, 534 U.S. 801 (2001) ___ pg. 9

Johnson v. Blaukat, 453 F.3d 1108, 1113 (8th Cir. 2006) ___ pg. 10

Johnston v. County of Sonoma, 2011 WL 855934, at *3 (N.D. Cal. 2011) ___ pg. 11

**1**

## Counter - Statement of Facts

The plaintiff would like to point out that his statement has never changed from his deposition to his Declaration. If the defendants had took the time to fully read the deposition they would have seen that after being asked on page 105, lines 6-8: "Okay, Now as a result of being sprayed with Cap-Stun did you suffer any injuries because of that?" The plaintiff answers on lines 9-24 on pages 105, and lines 1-2 on page 106 in brief: "Yeah. Burning Pain." (line 9 pg.105) and then: "And it burns, burns like feels like somebody like lit your face on fire." (lines 1-2 page 106). See Defendants Appendix to Opening Brief Page A-12.

So it is clear from this that the defendants are mistaken when they falsely claim that the plaintiff "has embellished facts in the Declaration beyond his testimony." It appears that instead of pursuing justice the defendants are attempting to embellish facts themselves in the hopes of saving the State "time and money" as was

2

previously written by the counsel for
the defendants on their motion for
extension of time.

With this issue hopefully cleared
up the plaintiff's Declaration
should remain as is since the
facts therein has never changed
unlike certain statements by the
defendants.

Argument 1

I. Defendants Are Not Entitled
To Judgment As A Matter Of
Law On Plaintiff's Excessive
Force Claim As The Use Of
Capstun Was Excessive Under
The Conditions.

The cases that the plaintiff has
cited in his Brief are clear within
themselves. The courts all agree that
one of the standards for determining
whether or not force was excessive
is whether or not such force was
used in a good faith effort to
restore order or whether it

THOMAS GORDON                                      Page 105

1  on the 11th?
2  A.  On the 11th.  On the 11th.
3  Q.  And the confrontation you had with Gill
4  and Deppe was on the 12th?
5  A.  On the 12th, the next day.
6  Q.  Okay.  Now as a result of being sprayed
7  with Cap-Stun did you suffer any injuries
8  because of that?
9  A.  Yeah.  Burning, pain.  I'm talking
10  about - I don't know if you ever been sprayed
11  with Cap-Stun, Cap-Stun is not just mace.  It's
12  not just little mace you can go buy in the
13  store.  This is something that only -- only can
14  be given out by -- like they can only get it if
15  you correction officer or a cop.  You got to
16  have that kind of status to just get the type
17  of Cap-Stun that they have.  It's not even
18  called just mace.  It's got some weird crazy
19  name like something spray, OZ, something
20  something, something Cap-Stun spray.  And it's
21  made out of something like alcohol based, with
22  some peppers, whatever type peppers.  It's not
23  no little regular peppers you go buy at the
24  little Mexican market.  They some top notch

THOMAS GORDON                                      Page 106

1  peppers right here.  And it burns, burn like
2  feel like somebody like lit your face on fire.
3  Q.  How long does it burn?
4  A.  It burns pretty much until you
5  completely get it all off.  Like, they lie and
6  they might say oh, well, it leaves in 24 hours
7  but that's not true.  It might stop hurting bad
8  in 24 hours, but if your pores is open it will
9  soak in.  So, again, it might dry off and every
10  time like you sweating and you feel it burning,
11  it's like you feel like you overdosed on Icy
12  Hot is what it feels like because one minute it
13  might cool and then it just heats all the way
14  up but you got to wash it all the way
15  completely off.  So pretty much until you wash
16  it all the way completely off.  I'll say
17  nowhere past 48 hours, if you don't take a
18  shower I give it like 48 hours.  Because there
19  has been a time where I had to sleep in
20  Cap-Stun and the whole day all the way up until
21  the next day when I got in the shower it was
22  burning, you feel me, but the next day it
23  doesn't burn as when they first spray you with
24  it.  That's the most.  But...

THOMAS GORDON                                      Page 107

1  Q.  In this particular case the lieutenant
2  let you take a shower, right?
3  A.  Yeah.  He let me take a shower after
4  they core shackled me, took me to the hole,
5  went to go get the write-up, did the write-up,
6  came back, did this little preliminary hearing,
7  I signed off on it, and then they came back and
8  brought me to the shower.
9  Q.  Okay.  And since you have been -- have
10  you sought medical care on your own?
11  A.  What you mean, for Cap-Stun?
12  Q.  Anything.
13  A.  I been incarcerated, I can't, sir, get
14  medical care on my own.
15  Q.  What about now?
16  A.  I can't get medical care on my own.  It
17  has to get approved by the doctor at the
18  Plummer and they don't approve nothing because
19  they can do it right there.  So if it's like
20  something like life threatening where they
21  can't give it to you at the Plummer, that's the
22  only case where they'll -- the doctor will
23  approve you going off grounds to get medical
24  treatment.  But if it's something they'll treat

THOMAS GORDON                                      Page 108

1  there you got to pay the $4 sick call fee and
2  get treated there.
3  Q.  Before you were incarcerated did you
4  have a family physician?
5  A.  Years ago.  Years ago.  I ain't had a
6  family physician since for a while.  A bunch of
7  years.
8  Q.  How about a dentist, do you see a
9  dentist?
10  A.  I haven't seen a dentist when I was
11  home for awhile, a bunch of years.
12  Q.  Once you start working what will your
13  schedule be?
14  A.  My schedule will be Monday through
15  Friday, probably 8 till 8 or 9 till 9, it will
16  be 12 hours a day so...
17  Q.  And then what happens?  When do you --
18  when do you max out?
19  A.  Out of the Plummer Center, I got about
20  12 months left at the Plummer.  So if I get a
21  job it will probably be less than that.  But as
22  of right now it's only 12 months left.
23  Q.  But once you get a job do you think
24  they might shorten the time?

was used maliciously and sadistically to cause harm or without need of provocation as in this case.

The defendants somehow assume that if they say that they used force in good faith but contrary to everything that I have raised in my complaint and in both my deposition and my Declaration that their word should be taken as gold no matter how disputed it is. Sgt. Gill not C/O. Deppe claim that the plaintiff was capstunned for putting on his sneakers. Where this comes from is beyond me. The plaintiff claims that he was capstunned without need of provocation and that he suffered "Burning Pain" that he likened to somebody lighting "your face on fire."

The plaintiff submits to the court that there are too many disputed facts in this case, disputed

facts that the defendants are trying to pass off as clear facts.

All of the cases that the defendants have cited have incidents on there (undisputed incidents) where the officers were attempting to restore order in some way, shape, or form. The plaintiff has been unable to find any cases in this circuit where the courts have heard the issue of whether or not an officer capstunning an inmate without cause or provocation would amount to cruel and unusual punishment. Other courts have heard such cases and have pretty much agreed that the use of capston without need or provocation (as in this case) does in fact amount to cruel and unusual punishment.

The defendants' do not deny that there are disputed facts in this case (see Defendants' Opening Brief, pg. 6). Although the defendants' admit to there being disputed facts they are attempting to get summary judgment based on such disputes by hinting that Sgt. Gill used his cap-stun in a good-faith effort to restore order or to prevent the plaintiff from throwing feces. This is clearly a disputed issue seeing as the plaintiff has said in his §1983 amended complaint and his declaration submitted in response to the defendants' motion that he was cap-stunned by Sgt. Gill without cause, provocation, or reason after waking up, getting out

6

of bed and getting dressed to comply promptly with Sgt. Gill's order to coff-up for a shakedown (see: Plaintiff's Declaration In Opp. #'s 5-10 and Plaintiff's §1983 amended complaint). It is not undisputed that inmates were throwing feces at Sgt. Gill. Inmates were throwing feces on the tier while no C/o's were around. The defendants' motion is filled with disputed facts that they are trying to pass off as undisputed.

The defendants' also submit that the use of capston, under the circumstances as alleged by the plaintiff, does not state a claim of excessive force. They then go on to cite several cases where the use of capston was upheld against non-compliant inmates—see: Giles v. Kearney, 516 F. Supp. 2d 362, 365 (D. Del. 2007), among others. They also claim that the plaintiff's injuries were de minimus and therefore do not rise to the level of a constitutional violation.

Even de minimus force may be unconstitutional if it is "repugnant to the conscience of Mankind." See Lawty v. Greenfield, 87 F. Supp

7

penological justification is repugnant, Plaintiff alleges he was assaulted after reporting staff misconduct). If there is no need for force, the Constitution may be violated by relatively small amounts of force, even a push or a shove. See Campbell J. Grammer, 889 F.2d 797, 802 (8th Cir. 1989) completely unjustified spraying with fire hose violated Eighth Amendment); Romaine V. Rawson, 40 F.Supp. 2d 204, 211-12 (N.D.N.Y. 2001) (slaps to the face violated the Eighth Amendment where there was no justification for any force). Even if the injuries suffered were not permanent or severe', a Plaintiff may still recover if 'the force used was unreasonable and excessive.'" See Felix V. McCarthy, 939 F.2d 699, 702 (9th Cir. 1991) (minor injuries are action-able when force is completely unjustified); Gray V. Spillman, 925 F.2d 90, 93 (4th Cir. 1991) (extent of injury is relevant to damages but is not a prerequisite to suit); Johnson V. Doherty, 713 F.Supp. 69, 71 (S.D.N.Y. 1989) (where injury is minor, Court must "consider the context in which the incident occurred"); Bowman i. Casler, 622 F.Supp. 836, 838 (N.D.N.Y. 1985); Campbell V. Grammer, 889 F.2d 797, 802 (8th Cir. 1989) (injuries from completely unjusti-

8

actionable even though not severe).
When courts analyze the issues, in-
fliction of minor injuries such as bruise
and abrasions will be found unconsti-
tutional only if there was no need to
use force at all or if there is other
evidence of malicious or sadistic behav-
ior by the defendants. See Valencia v.
Wiggins, 981 F.2d 1440, 1443, 1447 (5th cir.
1993) (affirming liability for infliction of
scratches, cuts and bruises not requiring
medical attention on unresisting prisoner);
Smallwood v. Renfro, 708 F.Supp. 182, 188
(N.D. Ill. 1989) (No requirement of "serious
injury" where force was used gratuitously;
choking the plaintiff and hitting him in the
arm with radio for no reason stated an
Eighth Amendment claim).

   The use of chemical agents, too, is
governed by the same standards as the
other uses of force. The unnecessary use
of cap-stun or other chemical agents
has been held unlawful by a number of
courts. One appellate decision said
that a burst of cap-stun was de minimis
force, since the effects were dissipated

9

ceived preliminary treatment. Jones v. Shields, 207 F.3d 491, 495 (8th Cir. 2000). In subsequent decisions that Court has emphasized that it did not hold all uses of pepper-spray de minimis. See Lawrence v. Bowersox, 297 F.3d 727, 731-32 (8th Cir. 2002) (noting that in Jones, the prisoner had refused direct orders, become threatening, and was once out of his cell); Treats v. Morgan, 308 F.3d 868, 872-73 (8th Cir. 2002) (Jones did not immunize all uses of Capstun against "disobedient or quarrelous" prisoners). Other Courts have rejected the notion that use of chemical agents is de minimis. See Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1199-1200 (9th Cir. 2000) (lack of significant or permanent injury was only one factor to be considered, and pain was excruciating), judgment vacated on other grounds, 534 U.S. 801 (2001). Officers may not use chemical agents against a person who poses no risk. One Court has held that "A basis for an Eighth Amendment claim exists when, as alleged here, an officer uses pepper spray without warning on an inmate who may have

10

use poses no threat." Treats V. Morgan, 308 F.3d 868, 873 (8th Cir. 2002)(using Capston against a prisoner who merely refused to accept a property receipt but posed no threat could violate the Eighth Amendment); Johnson v. Blaukat, 453 F.3d 1108, 1113 (8th Cir. 2006)(use of pepper spray against a prisoner who alleged she was not resisting presented a jury question of excessive force); Lawrence v. Bowersox, 297 F.3d 727, 732-33 (8th Cir. 2002)(affirming punitive damages for prisoners who were pepper-sprayed after questioning an officer's racist remark but who were confined to their cells and did not disobey orders).

Under this line of cases, the Court can find that the facts as stated by plaintiff in both his §1983 amended complaint and in his declaration sub- mitted in response to the defendants' motion preclude summary judgment for the defendants. The above cited cases, the facts as stated by plaintiff, and all of the disputed facts in this case preclude summary judgment for the defendants.

(11)

## Argument 2

II. Defendant Deppe Is Not Entitled To Summary Judgment On Plaintiff's Failure To Intervene Or Failure To Protect Claim And Plaintiff Can Assert Claim Alleging Failure To File An Accurate Report.

Johnston v. County of Sonoma, 2011 WL 855934, at *3 (N.D.Cal.2011)("A "cover up" theory section 1983 liability is only viable where the cover up itself deprives a plaintiff of Constitutional rights.") The plaintiff is attempting to prove that due to (folly and part) C/O. Deppe's false report C/O. Deppe did in fact violate the Plaintiff's 14th Amendment right and that the "cover up" theory section should apply since his false report was merely a conten-uation of his violation of the Plaintiff's 14th Amendment right. C/O. Deppe's false report deprived the plaintiff of his 14th Amendment right since had C/O. Deppe wrote a truthful report Plaintiff's 14th Amendment claim would have been dead. Even without

that the plaintiff fully disputes the defendants new claim that he could not see into the flap. The plaintiff submits the pictures provided by the defendants as evidence. From the vantage point given it is clear that if that flap were open and C/O. Deppe was standing there with the key inside the flap and Sgt. Gill was on the other side, that they both could look into the flap. C/O. Deppe made no mention relinquishing his keys and moving out of the way at which time he would have been able to see in the window. The defendants are merely trying everything just or argost to see these claims dismissed.

For these reasons, the Court should rule that defendant Deppe is not entitled to judgment as a matter of law.

(12)

(13)

# Argument 3

III. Defendants Claim Of Qualified
Immunity Is Moot.

It is clear from the Plaintiff's
Amended Complaint, Deposition, Declaration,
Opposition Brief, and this Reply Brief
that the defendants acted outside
of the law by capstunning the
Plaintiff without need or provocation.
This claim in itself shows that the
defendant acted outside of his duties
and the color of law. The same would
be true against C/O. Deppe for
failing to intervene / failing to protect.

The defendants attempts to use their
disputed briefs as the sole de-
terminer of facts by stating that
"The record as described in the
Opening and this Reply Brief does
not support a finding that the
defendants acted in a Plenn...

incompetent way or in a way to knowingly violate the law.

○ Then I ask what sending would be determined by looking at the Plaintiff's Brief and Reply Brief? The answer is that Defendant Gall capstoned the plaintiff without need or provocation, and that C/O. Deppe failed to intervene or otherwise protect the plaintiff. This would not have happened if they were

○ lawfully performing their duties so it is obvious that they were unlawfully performing such. This is why this argument is moot. It is clear that they were not lawfully performing any duties that entailed violated the Plaintiff's Constitutional Rights.

14

## Conclusion

For the reasons and legal authorities set forth above, defendants are not entitled to summary judgment on any claims.

Dated: 9-14-15

Thomas Gordon
JBI# 455684
1181 Paddock Road
Smyrna, De 19977

15

Exhibits

16

THOMAS GORDON                                    Page 105

1   on the 11th?
2 A.  On the 11th.  On the 11th.
3 Q.  And the confrontation you had with Gill
4   and Deppe was on the 12th?
5 A.  On the 12th, the next day.
6 Q.  Okay.  Now as a result of being sprayed
7   with Cap-Stun did you suffer any injuries
8   because of that?
9 A.  Yeah.  Burning, pain.  I'm talking
10   about - I don't know if you ever been sprayed
11   with Cap-Stun, Cap-Stun is not just mace.  It's
12   not just little mace you can go buy in the
13   store.  This is something that only -- only can
14   be given out by -- like they can only get it if
15   you correction officer or a cop.  You got to
16   have that kind of status to just get the type
17   of Cap-Stun that they have.  It's not even
18   called just mace.  It's got some weird crazy
19   name like something spray, OZ, something
20   something, something Cap-Stun spray.  And it's
21   made out of something like alcohol based, with
22   some peppers, whatever type peppers.  It's not
23   no little regular peppers you go buy at the
24   little Mexican market.  They some top notch

THOMAS GORDON                                    Page 106

1   peppers right here.  And it burns, burn like
2   feel like somebody like lit your face on fire.
3 Q.  How long does it burn?
4 A.  It burns pretty much until you
5   completely get it all off.  Like, they lie and
6   they might say oh, well, it leaves in 24 hours
7   but that's not true.  It might stop hurting bad
8   in 24 hours, but if your pores is open it will
9   soak in.  So, again, it might dry off and every
10   time like you sweating and you feel it burning,
11   it's like you feel like you overdosed on Icy
12   Hot is what it feels like because one minute it
13   might cool and then it just heats all the way
14   up but you got to wash it all the way
15   completely off.  So pretty much until you wash
16   it all the way completely off.  I'll say
17   nowhere past 48 hours, if you don't take a
18   shower I give it like 48 hours.  Because there
19   has been a time where I had to sleep in
20   Cap-Stun and the whole day all the way up until
21   the next day when I got in the shower it was
22   burning, you feel me, but the next day it
23   doesn't burn as when they first spray you with
24   it.  That's the most.  But...

THOMAS GORDON                                    Page 107

1 Q.  In this particular case the lieutenant
2   let you take a shower, right?
3 A.  Yeah.  He let me take a shower after
4   they core shackled me, took me to the hole,
5   went to go get the write-up, did the write-up,
6   came back, did this little preliminary hearing,
7   I signed off on it, and then they came back and
8   brought me to the shower.
9 Q.  Okay.  And since you have been -- have
10   you sought medical care on your own?
11 A.  What you mean, for Cap-Stun?
12 Q.  Anything.
13 A.  I been incarcerated, I can't, sir, get
14   medical care on my own.
15 Q.  What about now?
16 A.  I can't get medical care on my own.  It
17   has to get approved by the doctor at the
18   Plummer and they don't approve nothing because
19   they can do it right there.  So if it's like
20   something like life threatening where they
21   can't give it to you at the Plummer, that's the
22   only case where they'll -- the doctor will
23   approve you going off grounds to get medical
24   treatment.  But if it's something they'll treat

THOMAS GORDON                                    Page 108

1   there you got to pay the $4 sick call fee and
2   get treated there.
3 Q.  Before you were incarcerated did you
4   have a family physician?
5 A.  Years ago.  Years ago.  I ain't had a
6   family physician since for a while.  A bunch of
7   years.
8 Q.  How about a dentist, do you see a
9   dentist?
10 A.  I haven't seen a dentist when I was
11   home for awhile, a bunch of years.
12 Q.  Once you start working what will your
13   schedule be?
14 A.  My schedule will be Monday through
15   Friday, probably 8 till 8 or 9 till 9, it will
16   be 12 hours a day so...
17 Q.  And then what happens?  When do you --
18   when do you max out?
19 A.  Out of the Plummer Center, I got about
20   12 months left at the Plummer.  So if I get a
21   job it will probably be less than that.  But as
22   of right now it's only 12 months left.
23 Q.  But once you get a job do you think
24   they might shorten the time?

District of Delaware

Gordon v. Goll, et al, C.A.No.11-1029-LPS

I, Thomas Gordon, hereby certify that
I caused a true and correct copy of
the enclosed Reply Brief/Exhibits to be
served upon Michael McTaggart - 820 N. French
Street, Wilmington, De 19801 — by placing same
in sealed envelope for delivery via U.S.
Mail on 9-14-15.

Dated: 9-14-15                    Thomas Gordon

                    Thomas Gordon ##455684
                    1181 Paddock Road
                    Smyrna, De 19977

FILED

SEP 18 2015

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

I/M Thomas Gordon
SBI# 455684   UNIT 21 DL8
JAMES T. VAUGHN CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE  19977

U.S. POSTAGE >> PITNEY BOWES
ZIP 19977
02 1W   $ 001.86⁰
0001379774 SEP. 17. 2015

U.S.M.S.
X-RAY

Legal
Mail

U.S. District Court Clerk
844 N. King Street
Lock Box 18
Wilmington, De 19801