IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THOMAS GORDON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civ. No. 11-1029-LPS |
| | : | |
| SGT. GEORGE GILL, et al., | : | |
| | : | |
| Defendants. | : | |

Thomas Gordon, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

Michael F. McTaggart, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

March 11, 2016
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I. INTRODUCTION

Plaintiff Thomas Gordon ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.[1] He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5) Presently before the Court is the motion for summary judgment (D.I. 71) of Defendants Sgt. George Gill ("Gill") and C/O Michael Deppe ("Deppe") (together "Defendants"),[2] their motion to strike (D.I. 79), and Plaintiff's opposition to the motion for summary judgment.

## II. BACKGROUND

Plaintiff was housed in Building 19, D tier, cell lower 3 in the Secured Housing Unit ("SHU") during the relevant time-frame because he is classified as "behavioral" or "being too outspoken," which caused problems and led him to "fend for [himself]." (*Id.* at D.I. 73, at 6, 12-13) Plaintiff testified that when he arrived at the building, other inmates were having problems with Gill and, after two or so days on the tier, inmates were routinely making Gill "clean up," as a form of punishment by throwing feces and trash on the tier near the end of Gill's shift. (D.I. 73 at 6) Plaintiff explained this was a "SHU thing" and that there probably would be more physical confrontation but inmates are celled all day, "so you tend to . . . do whatever you have to do." (*Id.*) Gill could not leave his shift until the tier was clean, even if it meant that he worked overtime. (*Id.*

---

[1] Pursuant to 42 U.S.C. § 1983, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] Defendant Major James Scarborough was dismissed following screening of the case. (*See* D.I. 9, 10) In addition, false disciplinary and unlawful conditions of confinement claims were dismissed when the case was screened. (*See* D.I. 9, 10)

1

at 7) During the first week and a half of September 2011, every time Gill worked D tier in building 19, feces was thrown out onto the tier. (D.I. 23 Admission 2)

Plaintiff testified that approximately a week prior to the incident at issue, Gill "starts saying all this indirect stuff to [him]." (Id. at 8) Plaintiff confronted Gill and called him to his cell door. (Id.) The amended complaint alleges that Plaintiff and Gill exchanged words on September 11, 2011, when Gill refused to accept Plaintiff's commissary sheet. (D.I. 8 at 4) Plaintiff alleges that Gill told him he would make sure that Plaintiff "was removed from the tier by "tomorrow," meaning the 12th of September.[3] (Id.) Also, on September 11, 2011, Gill authored an incident report, because he believed that inmate Nave ("Nave"), who was celled next to Plaintiff, slid items under Plaintiff's cell door for Plaintiff to use to throw feces on the tier. (D.I. 27-27) Gill prepared the incident report to track Plaintiff because he believed that Plaintiff was the inmate responsible for throwing feces on the tier. (D.I. 27-1 at 29) When no items for throwing feces were found after a shakedown of Plaintiff's cell, Gill was waiting to see if the items slid under Plaintiff's door would be used the next time feces were found on the tier. (D.I. 27-1 at 29)

In their declarations, Deppe and Gill state that on September 12, 2011, they saw Plaintiff throwing feces from his cell while they were waiting to get onto D tier in Building 19 to take mental health on the tier to do rounds.[4] (D.I. 27-2 at 7; D.I. 73 at 15, 17) According to Deppe, they were

---

[3]Plaintiff submitted a grievance on September 11, 2011, complaining that Gill told him that his commissary list would be trashed unless Plaintiff admitted that he was the one throwing stuff on the tier. (See D.I. 27-1 at 1) In the grievance Plaintiff states that he is innocent of such behavior. (Id.)

[4]Deppe's declaration in support of Defendants' motion for summary judgment differs somewhat from the incident report he prepared on September 12, 2011. (See D.I. 27-2 at 10) In the undated declaration, Deppe indicates that he saw Plaintiff throw feces but, in his report he stated that Gill saw Plaintiff throw feces and told Deppe. Deppe reported, "on Monday, September 12, 2011, at 0830 hours Sergeant George Gill told me Officer Michael Deppe that we have to go on D

2

approximately thirty feet from Plaintiff's cell when he and Gill saw Plaintiff use some type of container and throw feces from his cell. (*Id.* at 15, 17) Deppe and Gill "responded" to Plaintiff's cell and, according to Deppe and Gill, they gave Plaintiff three to five direct orders to come to the door so he could be placed in restraints. (*Id.*) According to Gill, Plaintiff refused to come to the cell door, looked at Gill, and shook his head "no." (*Id.* at 17) Also, according to Gill, Plaintiff walked to the back of the cell and was about to pick up a small baggie with feces in it. (*Id.*) At this point, Gill instructed Deppe to open the flap on the cell door. (*Id.*) According to Deppe, when Plaintiff refused to come to the door, he was instructed by Gill to open the door cell flap, and he ordered Plaintiff through the flap to come to the cell door to cuff up. (*Id.* at 15) According to Deppe and Gill, Gill sprayed a short burst[5] of capstun into the cell. (*Id.* at 15, 17) Deppe closed the flap and locked it with the issued key. (*Id.*)

A grievance report submitted by Plaintiff states that he was awakened by Gill and told to cuff up for a shakedown.[6] (D.I. 8 Ex. A) Plaintiff got out of bed and began putting on his sneakers. (D.I. 8 Ex. A; D.I. 73 at 8, 10) Plaintiff testified that he wanted to put on his shoes because, with Gill at the door, you just never know. (D.I. 73 at 8) When he had put on his shoes, Plaintiff heard Gill say "nah, nah, f–k that." (D.I. 8 Ex. A; D.I. 73 at 8, 10) He heard Gill tell Deppe to open the cell flap as Plaintiff was walking towards the door. (D.I. 8 Ex. A; D.I. 73 at 8, 10) The door flap

---

tier right now because he just saw Inmate Gordon . . . throwing feces on the tier." (*Id.*) Gill's incident report states that he saw Plaintiff throw feces on the tier when he put his hand out of the crack at the bottom of the door and threw a peanut butter container out from under the door. (*See* D.I. 27-2 at 7)

[5]Described by Gill as a 1.5 second burst and described by Plaintiff as spraying the entire can.

[6]Plaintiff's deposition testimony provides facts similar to the grievance report. (D.I. 73 at 8-14)

3

was opened and Gill sprayed a can of capstun into the cell and Plaintiff's face and Deppe closed the flap. (*Id.*) Plaintiff explained that the capstun was "all in [his] face, all in [his] chest, everything, he got [me] real good." (D.I. 73 at 8) Plaintiff testified that he was "kind of agitated." (*Id.*) The capstun causes burning pain and "it burns . . . like somebody [] lit your face on fire." (*Id.* at 14)

Plaintiff was later told that Gill stated he came onto the tier and saw Plaintiff with his hand under the door throwing feces on the tier. (*Id.*) Plaintiff testified that this was an "outright lie," that there was nothing in front of his cell, "not a bag, not a drip, not nothing." (*Id.*) Plaintiff testified that, in the past, he had thrown feces on inmates who had "probably disrepected" him, but he "never, ever threw any bodily waste on any CO ever, never." (*Id.* at 10, 13)

The quick response team arrived and Plaintiff told them "this is BS." (*Id.* at 9) Plaintiff testified that he was asked to turn around and cuff up and that he complied with the order. (*Id.*) He was taken to medical and the mace was more or less washed from his face. (*Id.*) Plaintiff was escorted to "the hole" and given a shower. (*Id.* at 9, 14) Plaintiff testified that the capstun burns "until you wash it all the way completely off." (*Id.* at 14)

Following the September 12, 2011 incident, Plaintiff was charged with disorderly or threatening behavior, creating a health, safety or fire hazard, and failing to obey an order. (*See* D.I. 27-1 at 22) Plaintiff was found not guilty on all charges. (*See id.*) The disciplinary hearing decision states that there was no proof that the feces on the tier came from Plaintiff's cell; Lt. Daum stated that there were no feces in Plaintiff's cell in a bag or any other container. (*See id.* at 26)

Nave (who Gill states he had seen slide items under Plaintiff's cell door on the previous day), also received a disciplinary report on September 12, 2011 for creating a health, safety or fire hazard, failing to obey an order, and possession of non-dangerous contraband. (*See* D.I. 60 at 8) Nave was

4

immediately terminated from his tierman job pending the outcome of the hearing. (*See id.*) Nave stated that he did not pass any containers to Plaintiff; he was found not guilty of all infractions. (*See id.* at 9) The disciplinary hearing decision states that Gill was advised "that if he saw inmate Nave passing items the day prior to this incident, he should [have] written him up and terminated him at that point. Inmate Nave will be found not guilty of this write up, and with the understanding if he is still housed in SHU 19 D tier, he will be the next in line to be hired for the tierman job for this tier only." (*See id.*)

### III. LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 415 U.S. 574, 586 n.10 (1986). A party asserting that a fact cannot be – or, alternatively, is – genuinely disputed must support its assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 415 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in

favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating that party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). However, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

## IV. DISCUSSION

Defendants move for summary judgment on the grounds that: (1) the use of capstun was not excessive under the conditions; (2) the failure to protect or failure to intervene fails as a matter of law because there is no evidence that Deppe had a reasonable opportunity to intervene; and (3) Defendants are entitled to qualified immunity. Plaintiff opposes the motion and claims that Defendants used excessive force, Deppe failed to intervene or to protect him, and Defendants'

claim of qualified immunity on all claims is moot.[7]

A.   **Excessive Force**

Plaintiff claims that he was subjected to excessive force when Gill used capstun on Plaintiff.[8] The parties agree that there are disputed facts surrounding the events of September 12, 2011 and the use of capstun.

The core judicial inquiry when a prisoner alleges that prison officers used excessive force is whether force was applied in a good-faith effort to maintain or restore discipline, or instead was used maliciously and sadistically to cause harm. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010). Courts look to several factors, including: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by prison officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *see also Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015).

Plaintiff does not have to demonstrate serious injury, although the extent of injuries suffered is a factor in determining whether the use of force was necessary or not. *See Hudson*, 503 U.S. at 7; *see also Brooks v. Kyler*, 204 F.3d 102, 104 (3d Cir. 2000) (holding there is no fixed minimum quantum of injury that prisoner must prove he suffered through either objective or independent evidence in

---

[7]In his opposition, Plaintiff refers to Deppe's alleged falsification of reports as part of his claims. This claim, however, was dismissed when the case was screened and is not cognizable.

[8]The use of mace has been found to be constitutionally acceptable under certain circumstances *See Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. June 14, 2013); *Banks v. Mozingo*, 423 F. App'x 123, 126 (3d Cir. Apr., 18, 2011); *Travillion v. Leon*, 248 F. App'x 356 (3d Cir. Sept. 14, 2007); *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (finding that use of mace, tear gas or other chemical agent of the nature, when reasonably necessary to subdue recalcitrant prisoners, does not constitute cruel and inhuman punishment).

order to state claim for excessive force). The use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries. *See Hudson*, 503 U.S. at 9; *Brooks*, 204 F.3d at 106 (even *de minimis* use of force, if repugnant to the conscience of mankind, may be constitutionally significant).

Defendants concede there are disputed facts concerning the events of September 12, 2011, but, nonetheless argue that even Plaintiff's version of events does not set forth the elements of an excessive force claim. They argue that Plaintiff does not allege any injury, other than vague allegations of burning, that both Gill and Deppe state that Plaintiff was not compliant with orders to come to the cell door to cuff up,[9] and that Gill believed he had seen Plaintiff throw feces out of his cell moments before Gill and Deppe arrived at the cell door. Defendants further contend that the capstun was only used for a few seconds.

Gill testified that during the first weeks of September, the tier to which he was assigned was subjected to daily fecal assaults, and the record reflects that he believed Plaintiff was responsible for throwing fecal material onto the tier. He attempted a sting operation through the use of inmate Nave. No doubt, and entirely understandably, Gill was frustrated due to the prolonged fecal assault. However, there is a genuine factual dispute as to whether Plaintiff disobeyed orders. Defendants state that Plaintiff did not respond to orders to cuff up, while Plaintiff states that he was compliant with Defendants' orders. Assessing the credibility of the parties will be a matter for the factfinder. Plaintiff was ultimately found not guilty of the charges of failure to disobey a direct order. In addition, Plaintiff was found not guilty of throwing fecal material immediately prior to employment of the capstun. Finally, to the extent Defendants claim Plaintiff's injuries were only *de minimis*, there

---

[9] Defendants contend that Plaintiff admits, at least in part, that he did not immediately come to the cell door, but instead put on his sneakers.

8

is some dispute on this point – Plaintiff testified that his face was burning like it was lit on fire – but, more pertinently, even a minimal use of force and a *de minimis* injury could, under the totality of circumstances, give rise to a constitutional violation. *See Hudson*, 503 U.S. at 9; *Brooks*, 204 F.3d at 106.

In short, the record reveals genuine issues of material fact as to whether the force was applied in a good faith effort to maintain or restore discipline, or instead was applied to a compliant inmate maliciously and sadistically to cause harm. Accordingly, the Court will deny Defendants' motion for summary judgment on the excessive force issue.

**B.     Failure to Protect/Failure to Intervene**

Defendants argue that summary judgment is appropriate on the failure to protect/failure to intervene claim raised against Deppe on the grounds that the limited record does not support Plaintiff's claim. Plaintiff contends that Deppe refused to do anything to prevent Gill from using capstun against him without cause or provocation.[10]

The failure of a corrections officer to intervene in certain acts, such as an unjustified use of force, "can be the basis of liability for an Eighth Amendment violation under § 1983. . . ." *Smith* v. *Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002).

> The approving silence emanating from the officer who stands by and watches as others unleash an unjustified assault contributes to the actual use of excessive force, and we cannot ignore the tacit support such silence lends to those who are actually striking the blows. Such silence is an endorsement of the constitutional violation resulting from the illegal use of force. It is incompatible with the restrictions imposed under the Eighth Amendment, and is therefore unacceptable. We will not immunize such conduct by suggesting that an officer can silently contribute to such a constitutional violation

---

[10]The Court does not address Plaintiff's additional claim that Deppe prepared false disciplinary reports, as those claims have been dismissed.

9

> and escape responsibility for it. The restriction on cruel and unusual
> punishment contained in the Eighth Amendment reaches
> non-intervention just as readily as it reaches the more demonstrable
> brutality of those who unjustifiably and excessively employ fists,
> boots or clubs.

*Id.* at 651. Hence, the failure or refusal to intervene in another officer's assault on an inmate can create direct liability for the non-intervening officer who did not physically participate in an excessive use of force. *See id.* at 650-51. In order for liability to attach under § 1983 for the failure to intervene in another's use of excessive force, a plaintiff must show that: (1) the defendant failed or refused to intervene when a constitutional violation took place in his or her presence or with his or her knowledge; and (2) there was "a realistic and reasonable opportunity to intervene." *Smith*, 293 F.3d at 651.

As discussed above, a genuine issue remains as to whether Defendants used excessive force and violated Plaintiff's constitutional rights. In addition, the record contains Deppe's two somewhat different versions of events and shows that Deppe took affirmative action by opening the flap of Plaintiff's cell in response to the directive of Gill. The record does not indicate that Deppe took steps to intervene in the use of the capstun. Having concluded that the record does not allow the Court to grant summary judgment on the excessive force claim, the Court reaches the same conclusion on the failure to protect/failure to intervene claim.

Accordingly, the Court will deny Defendants' motion for summary judgment on the failure to protect/failure to intervene claim.

### C. Qualified Immunity

Defendants move for summary judgment on the claims against them on the basis that they are entitled to qualified immunity. They contend that Plaintiff did not comply with orders to cuff up

and that, at most, Gill was mistaken as to whether Plaintiff threw feces onto the tier.

Under the doctrine of qualified immunity, government officials are immune from suit for damages where their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). Qualified immunity protects government officials whether they have made a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. *See id.* To determine whether qualified immunity applies, a court must examine "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (internal citations omitted). A court may exercise its discretion in choosing which prong to address first, considering the circumstances of the particular case. *Id.* at 236.

Based on disputed issues as to whether the force used was reasonable and the denial of Defendants' motion for summary judgment on the excessive force and failure to intervene claims, at this juncture the Court cannot determine whether Defendants are entitled to qualified immunity. "A decision on qualified immunity will be premature when there are unresolved disputes of historical facts relevant to the immunity analysis." *Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002). Because there remain disputed issues of fact material to the qualified immunity determination, the Court will deny Defendants' motion for summary judgment on this issue.

## V.  CONCLUSION

For the above reasons, the Court will deny Defendants motion for summary judgment (D.I. 71) and motion to strike[11] (D.I. 79). An appropriate Order follows.

---

[11]The Court is aware that Plaintiff's sur-reply was filed in derogation of the Local Rules of this Court. Plaintiff, however proceeds *pro se* and, therefore, the Court affords him leniency.

11